**SO ORDERED.**

**SIGNED this 19 day of October, 2011.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:                                                                    CASE NO.

**CLARENDON HOLDINGS, LLC**                       11-02479-8-SWH

        DEBTOR

**ORDER REGARDING VALUATION**

The matter before the court is debtor Clarendon Holdings, LLC's motion, filed on April 28, 2011, for valuation of collateral consisting of real property owned by the debtor and secured by a deed of trust in favor of creditor Gateway Bank & Trust Company. The issue is whether the court should value the property according to its fair market value or, instead, determine its liquidation value. A hearing was held on August 10, 2011, in Raleigh, North Carolina.

Debtor Clarendon Holdings, LLC ("Clarendon") filed a Chapter 11 petition on March 31, 2011. The debtor owns real property located at 230 North Second Street, Wilmington, North Carolina (the "Property"), which is encumbered by a first priority deed of trust in favor of Gateway Bank & Trust Company ("Gateway"). Gateway filed a proof of claim in the amount of $ 487,229.14, secured by the Property. The debtor did not file an objection to the proof of claim.

The debtor filed a Motion for Valuation of Collateral of Gateway Bank on April 28, 2011, in which it stated that it anticipated filing a plan of reorganization providing for the surrender of the Property to Gateway in full satisfaction of Gateway's secured claim pursuant to § 1129(b)(2)(A)(iii). After a hearing on August 10, 2011, Gateway filed a supplemental memorandum of law in which it set out the bases on which, it believes, the property should be valued with reference to its liquidation value. The debtor responded with a supplemental memorandum in support of applying a fair market value (hereinafter frequently shortened to "market value") analysis. Gateway then filed a reply in which it suggested that these issues could not be efficiently resolved until after the debtor had specified its intended treatment of the claim in a filed plan. Shortly thereafter, the debtor did file its chapter 11 plan. In it, the debtor proposes to surrender the Property in full satisfaction of its secured debt, to obtain a credit equal to the market value of the Property, and to treat any deficiency between the current market value of the Property and Gateway's claim as a general unsecured claim.

At the hearing the debtor offered the testimony of Mr. Chris Johnson, a North Carolina commercial real estate appraiser. Using the sales comparison method and assuming a 12-18 month exposure period, he opined that the fair market value of the Property as of July 27, 2011, was $ 445,000. Mr. Johnson testified that he has witnessed rapid appreciation of values in the last ten years in the central business district in which the Property is located.

Gateway offered the testimony of Mr. Earl M. Worsley, also an appraiser in North Carolina, who estimated the market value of the Property at $ 475,000 and its liquidation value at $ 335,000 as of March 24, 2011. Like Mr. Johnson, Mr. Worsley employed the sales comparison method of valuation to derive the market value of the Property, based upon a one- to two-year exposure. He then derived the liquidation value of the Property by discounting the market value by 30%.

Mr. Worsley testified that he was instructed by Gateway to use a 90-day exposure time for determining liquidation value. According to Mr. Worsley's testimony, property values should stabilize in the central business district, but prices have declined in the past several years "due to current economic conditions, as well as an oversupply of product currently on the market."

Inasmuch as Gateway's expert witness' opinion of market value exceeds that of the debtor's expert by $ 30,000, the dispute over valuation turns on whether it is appropriate for the court to use market value or liquidation value in deciding this motion. Both the debtor and Gateway have submitted memoranda of law in support of their respective positions and the matter is ripe for disposition.

## DISCUSSION

The debtor's § 506 motion requires the court to determine the value of the Property "in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a)(1). Here, the purpose of the valuation is to determine whether surrender of the Property to Gateway will give that creditor the indubitable equivalent of its claim, to which it is entitled under 11 U.S.C. § 1129(b)(2)(A)(iii). As the plan proponent, the debtor bears the burden of establishing that the plan meets all the requirements of §§ 1129(a) and (b), such that under the plan the court has "no doubt that the secured creditor receives consideration equal to its claim in value or amount." In re Bannerman Holdings, LLC, Case No. 7:11-CV-00009-H (E.D.N.C. Sept. 30, 2011), quoting In re Philadelphia Newspapers, LLC, 599 F.3d 298, 326 (3d Cir. 2010) (dissenting opinion).

When considering dirt for debt plans in other recent cases, this court has applied a conservative fair market value analysis to determine whether a secured creditor's treatment satisfies the indubitable equivalent requirements.  See, e.g., In re Sailboat Properties, LLC, 2011 WL 1299301 at * 2 (Bankr. E.D.N.C. 2011); In re Bannerman Holdings, LLC, 2010 WL 4260003 at *4 (Bankr. E.D.N.C. 2010) ("Bannerman I"), vacated on other grounds, Case No. 7:11-CV-00009-H (E.D.N.C. Sept. 30, 2011) ("Bannerman II").  In Sailboat and Bannerman I, the parties collectively sought to establish the fair market value of the properties at issue, and the question of whether to instead apply a liquidation value was not raised.

That question is the specific and only issue before the court today.  This case does differ from Bannerman I and Sailboat in some welcome ways, the most obvious being that the court is not presented with the unique challenges of a partial dirt-for-debt case or with widely varying valuations.  First, the debtor seeks to surrender all of the property to Gateway.  It is "generally understood that when a secured creditor receives all of the property to which its lien attaches, the creditor has received the full value – the 'indubitable equivalent' – of its monetary claim, because 'common sense tells us that property is the indubitable equivalent of itself.'"  Bannerman I, 2010 WL 4260003 at * 3 (quoted with approval in Bannerman II, Case No. 7:11-CV-00009-H, slip op. at 8 (vacating Bannerman I on other grounds)), quoting Matter of Sandy Ridge Dev. Corp., 881 F.2d 1346, 1350 (5th Cir. 1989); see also 7 Collier on Bankruptcy,  ¶ 1129.04[2][c] (Alan N. Resnick & Henry J. Sommer, eds. 16th ed.) (explaining that there are "some definitive statements that can be made," among them that "abandonment, or other unqualified transfer of the collateral, to the secured creditor satisfies this [indubitable equivalent] requirement").

Second, and simplifying matters further, the parties in this case have no major disagreement about the Property's fair market value. Indeed, Gateway's expert established a market value that is higher than that assigned by the debtor.

In the court's view, this case aligns with Sailboat, Bannerman, and numerous other cases in that the court is convinced that the appropriate value to use in the context of §§ 506(a) and 1129(b)(2)(A)(iii) is the a property's fair market value. The court is not alone in this conclusion, as other courts assessing the value of property debtors propose to surrender in the context of "dirt for debt" also determine the fair market value. See, e.g., In re River Road Hotel Partners, LLC, 651 F.3d 642, 650, 651 (7th Cir. 2011) (discussing surrender of real property as "indubitable equivalent" of secured claim and extent to which credit bidding is countenanced under § 1129(b)(2)(A), the goal being to "provide the Lenders with the *current market value* of the encumbered assets"); In re Philadelphia Newspapers, LLC, 599 F.3d 298, 312 (3rd Cir. 2010) (affirming district court's determination that debtors could proceed under § 1129(b)(2)(A)(iii) without allowing lenders to credit bid, and quoting with approval the district court's observation that "Lenders 'retain[ed] the right to argue at confirmation, if appropriate, that the restriction on credit bidding failed to generate *fair market value* at the Auction, thereby preventing them from receiving the indubitable equivalent of their claim'"); Sandy Ridge, 881 F.2d at 1348, 1350 (surrender of all mortgaged property to mortgagee satisfied "indubitable equivalent" requirement and also satisfied secured claim to the extent of property's fair market value); In re Immanuel LLC, 2011 WL 938410

at *3, *5 (Bankr. W.D. Mich. 2011) (determining conservative fair market value for property to be surrendered in a complicated dirt for debt case).[1]

The uncontested testimony in this case established that the Property currently is used as a parking lot, although its "highest and best use" is as mixed-use development. See Sailboat, 2011 WL 1299301 at * 2  (applying four-step "highest and best use" inquiry set forth in In re Peerman, 109 B.R. 718, 722 (Bankr. W.D. Tex. 1989)).  Mr. Worsley testified that the fair market value he assigned to the Property is based on the Property's current, "as is" condition.  Both appraisers noted that a new Marriott is to be constructed across the street from the Property, and  Mr. Worsley stated that in his opinion, the Wilmington real estate market is attempting to "find a bottom" and stabilize. This testimony tends to establish that the market value as determined by the appraisers is based on a market that is slow and generally unfavorable, yet also relatively stable, and that the value of the Property could increase based on changed usage.  The court makes these points not to suggest that the appraised fair market value of the property is likely to increase in the near future: rather, given that the property was valued "as is" in a currently depressed but "bottoming out" market, the court is persuaded that the market values assigned by the appraisers are both conservative and realistic.

Mr. Worsley's liquidation value, in contrast, simply takes the market value and applies a 30% deduction to it.  That deduction is based on Gateway's request that he calculate liquidation value assuming a liquidation sale within 90 days.  Mr. Worsley testified that he did not have any

---

[1] In addition, many other dirt for debt cases reviewed by this court refer to appraisals establishing "value" without further specifying whether the value to which they refer is fair market value, or some other standard of valuation.  It seems probable that in those decisions, "value" is simply shorthand for fair market value, and that the point did not receive more specific discussion because the parties and court understood fair market value to be presumptively, and generally, applicable.

liquidation comparables to use in arriving at the lower liquidation value, that he never gives liquidation values unless he is specifically asked to do so, and that he used a 90-day exposure period only because Gateway requested that he do so. The selection of this exposure period appeared to be totally random: with the bare exception of its request for a liquidation valuation, there is no other indication that Gateway has any plan, need, or intent to liquidate the property within 90 days, or that its circumstances would prompt it to actually accept such a significant cut in sale price. As the colloquy in the hearing revealed, shorter exposure periods generally equate to lower prices. The court cannot countenance a creditor's selection of an exposure period for which the only objective appears to be to limit valuation.

Section 506 "does not necessarily contemplate forced sale or liquidation value of the collateral." United States v. Arnold & Baker Farms, 177 B.R. 648, 656 (9th Cir. BAP 1994) (quoting H.R. Rep. No. 595, 95th Cong. 1st Sess. 356 (1977)). Obviously, there would be no reason for the Bankruptcy Code to recognize debtors' ability to surrender property as an appropriate treatment for secured creditors, as is set forth in § 1129(b)(2)(A)(iii), if the result could only be identical to that accomplished upon relief from stay where foreclosure followed. After considering all the testimony, the court is of the view that the various bases on which a 90-day liquidation value was determined are not persuasive, and that neither § 506 nor § 1129(b)(2) call for use of liquidation value in this matter.

Accordingly, the court is not persuaded that it should depart from the conservative fair market value standard applied in the cases discussed above. Based on the foregoing, the court concludes that the value of the Property the debtor proposes to surrender to Gateway in full satisfaction of Gateway's secured claim is $ 475,000, which is the fair market value as determined

by Gateway's expert. The remaining amount of Gateway's claim will be dealt with in the debtor's plan as an unsecured claim.

**SO ORDERED**.

**END OF DOCUMENT**